IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES JENNINGS,

    Plaintiff,             Case No. 2:06-cv-02476 ALA (P)

    vs.

THERESA SCHWARTZ, et al.,

    Defendants.           <u>ORDER</u>

                                    /

James Jennings is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 5.) On May 8, 2007, Jennings filed a verified amended complaint alleging that Defendants R. L. Andreasen, M.D., James Bick, M.D., J. Kofoed, M.D. and A. J. Sawicki, M.D. (collectively "Defendants") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (Doc. 13.)[1] The gravamen of Jennings's amended complaint is that Defendants have, in concert, intentionally delayed and denied surgical procedures to remedy pain in his right ankle that was caused by an osteochondral lesion along the medial dome of the talus.

---

[1] The claim against Defendant Sawicki was dismissed on January 30, 2008, pursuant to 28 U.S.C. § 1915A(a), because Jennings did not allege that Sawicki "failed to act or respond to plaintiff's medical need." (Doc. 18 at page 3.)

On August 15, 2008, Jennings underwent right ankle arthroscopy with debridement and currettage, debridement and microfracture of talar dome defect, posteromedial talar dome at the St. Mary's Medical Center. (Doc. 39, Ex. G at 111.) Jennings's claim that he was denied surgery is now moot since the surgery requested has been performed and Jennings has not provided any evidence that he has not received post-operative care. The issue before this Court, therefore, is whether the Defendants' conduct, or lack thereof, which delayed the scheduling of surgery for Plaintiff's right ankle, constituted deliberate indifference and violated the Eighth Amendment.

On May 4, 2009, Defendants filed a motion for summary judgment on the ground that there are no disputed material facts and that they are entitled to judgment as a matter of law. (Doc. 39.) Jennings filed a timely opposition on July 2, 2009 (doc. 54); Defendants have timely replied on July 7, 2009 (doc. 55). For the reasons set forth below, the motion for summary judgment is granted.

## I

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In opposing summary judgment, a nonmoving party must "go beyond the pleadings and, by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Id.* at 323-24.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

1  (1986).  Material facts are those which may affect the outcome of the case.  *Id.* at 248.  If the
2  moving party demonstrates an absence of a genuine issue of material facts, then the opposing
3  party  "must do more than simply show that there is some metaphysical doubt as to the material
4  facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
5  According to Rule 56(e) of the Federal Rules of Civil Procedure, the opposing party must
6  provide "specific facts showing there is a *genuine issue for trial*."  *Id.* at 587 (emphasis in
7  original).

8    "On summary judgment the inferences to be drawn from the underlying facts contained
9  in such materials must be viewed in the light most favorable to the party opposing the motion."
10  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  A district court must not make any
11  credibility findings.  *Anderson*, 477 U.S. at 255.  "The moving party bears the initial burden to
12  demonstrate the absence of any genuine issue of material fact."  *Horphag Research Ltd. v.
13  Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  "Once the moving party meets its initial burden,
14  however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise
15  provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *Id.* (internal
16  quotation marks omitted).

17    Where the party resisting a motion for summary judgment is *pro se*, the court "must
18  consider as evidence in his opposition to summary judgment all of [his] contentions offered in
19  motions and pleadings, where such contentions are based on personal knowledge and set forth
20  facts that would be admissible in evidence, and where [he] attested under penalty of perjury that
21  the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918,
22  923 (9th Cir. 2004).  The opposing party need not establish a material issue of fact conclusively
23  in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge
24  to resolve the parties' differing versions of the truth at trial.  *T.W. Elec. Serv., Inc. v. Pacific
25  Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Direct testimony of the non-movant
26  must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

1999). Nonetheless, courts are not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## II

### A

Jennings's federal constitutional claims can be summarized as follows:

1. The delay in providing adequate treatment for his serious medical needs with regard to his right ankle violated the Eighth Amendment's protection against cruel and unusual punishment.

2. The Defendants' delay in providing "constitutionally adequate treatment" to Jennings constitutes deliberate indifference to Jennings's serious medical needs.

3. Dr. Andreason and Dr. Bick inflicted wanton and unnecessary pain and emotional distress on Jennings by not responding to Jennings's complaints of pain and failing to schedule him for right ankle surgery.

In his amended complaint, Jennings requests that the Court :

> issue an injunction ordering Defendants [] to
> 1) immediately arrange for the Plaintiff's need of a surgical consultation by an orthopedic specialist with the expertise in the treatment and restoration of function of Plaintiff's serious medical condition at U.C. Davis.
> 2) Carry out without delay the treatment and care directed by such medical practitioner.
>
> Award compensatory damages in the following amounts: $500,000+ jointly and severably against defendants for the physical and emotional injury resulting from their failure to provide adequate medical care to Plaintiff . . . .
>
> Punitive Damages in the following amounts: $5,000,000+ against each defendant for their intentional and callous acts/omissions, which resulted in the physical and emotional injury of Plaintiff.

as well as compensating him for his costs and expenses. (Doc. 13 at 10.)

On August 15, 2008, Plaintiff underwent surgery on his right ankle. Accordingly, Plaintiff's claim for injunctive relief is moot. Plaintiff also prayed for compensatory and

punitive damages because of Defendants' alleged deliberate indifference to his complaints about pain in his right foot and ankle.

**B**

The following facts regarding Jennings's treatment are undisputed.

Beginning in May 2001, Jennings was consulted by various doctors at the California Medical Facility ("CMF"), including Dr. Sawicki, Dr. Kofoed and Dr. Mehta. (Doc. 39, Ex. G.) At each visit, Jennings complained of pain in his right foot and ankle. *Id.* On at least two occasions, he was transported to see Dr. Shifflett at Queen of the Valley Hospital for orthopedic evaluations of his right ankle. *Id.* Between 2001 and 2008, x-rays, MRIs, and CT scans of his right ankle were performed on at least nine occasions. These tests disclosed that Jennings suffered from an "osteochondral injury of the talar dome with associated osteoarthritis and small intraarticular loose body." *Id*. at 26. According to his medical file, Jennings was prescribed pain medication to manage his ankle pain and reported improvements in his pain levels after taking the medications. Nevertheless, he continued to play sports, particularly basketball, until at least July 2006. Jennings admits that he continued playing basketball until 2005, even after he was advised by doctors at the clinic to stop. (Doc 54 at 10.) His medical records, however, reflect a finger sprain injury in July 2006 due to playing basketball. (Doc. 39, Ex. G. at 65.) On August 15, 2008, Jennings underwent arthroscopic debridement surgery on his right ankle at University of California San Francisco ("UCSF"). *Id*. at 109.

Since 2001, Jennings also requested medical treatment for a number of other injuries, including an injury to his right shoulder, a torn ACL in his left knee, a herniated disc in his back, several injuries to his fingers, and pulmonary sarcoidosis. Jennings underwent surgery on his right shoulder on April 10, 2002. *Id.* at 11-15; Doc. 39-5 Decl. of Kofoed at ¶ 4. He had arthroscopic debridement surgery on his left knee on May 31, 2005, performed by Dr. Kofoed. Doc. 39, Ex. G at 48-57; Decl. of Kofoed ¶¶ 11-14. He had reconstructive surgery on his left knee on March 7, 2007, performed by Dr. Shifflett. Doc. 39, Ex. G at 89.

1   On January 4, 2007, Jennings was seen by Dr. Bick following an abnormal chest x-ray.
2   *Id.* at 92.  He underwent a bronchoscopy, a biopsy of his lung, and nuclear cardiac stress tests in
3   October and December, 2007.  *Id.* at 96-97, 100-104; Doc. 39-4 Decl. of Bick at ¶ 10.

### III

Jennings maintains that Defendants' delay in prescribing surgery of his right ankle demonstrates deliberate indifference toward his pain and serious medical needs in violation of the Eighth Amendment.

To state a claim under § 1983, "a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A person deprives another of a constitutional right, where that person does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007) (quotations omitted). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1991)).

The government is obligated "to provide medical care to those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  "Unnecessary and wanton infliction of pain constitutes a violation of the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Id.*  "Such indifference may be manifested in two

ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-106). Medical malpractice does not rise to the level of a constitutional violation merely because a patient is a prisoner. *Estelle*, 429 U.S. at 106.

"Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson v. County of Washoe*, 290 F.3d 1175, 1187-88 (9th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

Viewing the evidence in the light most favorable to Jennings, the Defendants' actions do not rise to the level of deliberate indifference. The Defendants considered and monitored the seriousness of the injury to Jennings's right ankle. They also considered the necessity for surgery on his left knee and his right shoulder, and the need to monitor his pulmonary problems. They concluded that these medical problems required immediate monitoring or surgery and were more severe than the condition of his ankle. (Doc 39, Ex. G at 48-57, 89, 92, 96-97, 100-104.) Defendants also concluded that surgery on his ankle risked exacerbating his pain, rather than alleviating it, and was more likely to create more medical issues. *Id.* at 62. In addition, they opined that surgery on his left knee and right shoulder would likely improve his medical condition and should be done before considering an operation on his ankle. *Id.* at 9-10, 46-56, 62, 67-68, 80-86, 89. The Defendants' medical opinions were based on several factors, including the fact that the ankle injury was not life-threatening, that the pain was managed with medication and ankle braces, and that there was a chance the surgery would not alleviate the pain

Jennings was experiencing. (Doc. 39-3 Andreason Decl. at ¶¶ 4, 14, 21; Doc. 39 Ex. G.) Notably, the record also shows that Jennings was able to continue playing basketball for years, including during the time he claims the pain in his ankle was debilitating. The last date in his medical records which notes he was playing basketball was July 4, 2006, four months before he filed his initial complaint in this Court. (Doc. 39, Ex. G at 65.)

As Dr. Andreason stated in his May 1, 2009 declaration, Jennings's medical records "currently consist of five volumes of records, totaling over 1,000 pages. Four of these five volumes consist of records generated from the year 2001 or later." (Doc. 39-3 Andreason Decl. at ¶ 23.) This volume of medical records does not support Jennings's claim that Defendants were indifferent to his medical needs.

"[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Comm.*, 766 F.2d 404, 407 (9th Cir. 1985). Furthermore, a plaintiff's disagreement with a physician's diagnosis or treatment is not enough to establish deliberate indifference. In *Estelle*, the Supreme Court stated:

> the question of whether an X-ray – or additional diagnostic techniques or forms of treatment – is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most, it is medical malpractice, and as such the proper forum is the state court under [state law].

*Estelle*, 429 U.S. at 107. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *see Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [a patient's] serious medical needs.").

Jennings points to surgical notes from his May 31, 2005 *knee surgery* to demonstrate that budgetary concerns influenced Defendants' medical decisions regarding his ankle. The post-operative notes from his *knee surgery* state that "[b]ecause of the lack of beds, [CMF was]

unable to proceed with anterior cruciate reconstruction due to lack of postoperative support care."[2] (Doc. 54, Ex. T.) This argument is not persuasive. While it is quite true that "budgetary constraints . . . do not justify cruel and unusual punishment," (*Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986)), a medical decision to delay in determining whether a costly surgical procedure may prove to be unnecessary does not demonstrate a deliberate indifference to a prisoner's medical needs. The record shows that Defendants considered the risks inherent in any surgery and determined that it was appropriate to treat Jennings's complaints about his ankle pain with prescription drugs while his more immediate need to have surgery to treat his more severe medical conditions was cared for. (Doc. 39-3 Andreason Decl. at ¶¶ 4-21, Doc 39-4 Bick Decl. at ¶¶ 6-10, Doc. 39-5 Kofoed Decl. at ¶¶ 8-13.) Considering whether surgery should also be performed to alleviate the pain on his left ankle became secondary to these concerns. *Id.*

## IV

In his opposition to the motion for summary judgment, Jennings failed to demonstrate that there are any genuine issues of material fact in dispute which, if decided in his favor, would support a judgment against any of the Defendants that they were indifferent to his serious medical needs in violation of the Eighth Amendment. In his opposition, Jennings accepted as true 35 of the 46 facts set forth in Defendants' statement of undisputed material facts.

### A

Jennings alleges that Dr. Bick was liable because as Chief Medical Officer, acting in a supervising capacity, he had a duty "to ensure the constitutionally adequate medical care of all

---

[2] Plaintiff has failed to demonstrate that budgetary constraints affected the Defendants' decisions concerning his *ankle* surgery. Additionally, a shortage of beds at a facility or adequate support staff does not demonstrate that Defendants were personally responsible for the delay in the ability to treat his medical condition. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). The record shows that with respect to his knee surgery, Dr. Kofoed took the more conservative route in debridement, instead of a full reconstruction, not only because of a bed shortage, but also in the hope that the knee would not need a full reconstruction. (Doc. 54, Ex. T.)

the inmates in the institution." (Doc. 54 at page 17, lines 17-19.) Jennings does not allege that Dr. Bick personally delayed or denied him adequate medical treatment. Supervisors are only liable under § 1983 when the evidence shows that they participated in, directed, or knew of the violations, and failed to intervene to prevent them. *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (citing *Taylor*, 880 F.2d at 1045). The undisputed evidence shows that Dr. Bick granted two of Jennings's "602 Inmate Appeals." (Doc. 54 Ex. Y Plaintiff's 602s). He was not involved in Jennings's orthopedic care. Dr. Bick authorized every "chrono" presented to him regarding Jennings's medical needs. As recognized above, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor*, 880 F.2d at 1045. Because Jennings was unable to present evidence of Dr. Bick's personal participation in any decision regarding the alleged delay in treating Jennings's ankle, his claim of deliberate indifference as against Dr. Bick fails.

**B**

In his opposition, Jennings admits the allegations in Defendants' statement of undisputed material facts that Dr. Andreason never examined Jennings's ankle. He also admits that Dr. Andreason never personally denied Jennings any medical care, and that his ankle pain was neither life-threatening, nor as urgent as the prior treatment of his knee and pulmonary medical problems. Accordingly, he has failed to present facts that show that Dr. Andreason was deliberately indifferent to any serious medical condition suffered by Jennings.

**C**

Jennings has accepted as true Defendants' statement of undisputed material facts 13 which provides that he was referred to orthopedics on April 30, 2004 because of his right ankle and left knee pain. He was examined by Dr. Kofoed on June 11, 2004. Dr. Kofoed ordered a CT scan of Jennings's right ankle. He referred Jennings to Dr. Shifflett. Dr. Kofoed did not examine Jennings's ankle again. This evidence fails to demonstrate that Dr. Kofoed was deliberately indifferent to Jennings's serious medical needs regarding his ankle injury.

The undisputed evidence of Defendants' cautious decisions regarding the appropriate treatment of Jennings's right ankle does not demonstrate a deliberate indifference to his medical needs in violation of the Eighth Amendment. At most, it simply illustrates that Jennings did not agree with the Defendants' medical decision to delay surgery on his right ankle. As noted above, a prisoner's disagreement with a prison medical authority does not demonstrate deliberate indifference to his serious medical needs. *Sanchez*, 891 F.2d at 242.

**IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (doc 39) is hereby GRANTED;
2. The case is dismissed;
3. The trial date scheduled for July 13, 2009, is hereby VACATED; and
4. The order and writ of habeas corpus ad testificandum (doc 49) is hereby VACATED.
4. The clerk is directed to enter judgment and close the case.

/////

DATED: July 8, 2009

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation